# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

KIMBALL A. ROGERS,         )
                                 )
        Plaintiff,       )
                                 )
v.                           )     Case No. 3:07-cv-00750
                                 )
MICHAEL J. ASTRUE,       )     Judge Thomas A. Wiseman, Jr.
COMMISSIONER OF SOCIAL SECURITY    )
                                 )
        Defendant.     )

## MEMORANDUM OPINION

Before the Court is Plaintiff Kimball A. Rogers' Motion for Judgment on the Administrative Record (Doc. No. 15) and supporting memorandum (Doc. No. 16) seeking judicial review of the Commissioner's denial of her claim for Supplemental Security Income ("SSI"). The Court withdraws the previous reference to the Magistrate Judge. For the reasons explained below, the Court finds that the ALJ's decision is supported by substantial evidence in the record, and that the ALJ applied the correct legal principles in reaching his decision. Accordingly, the Plaintiff's motion will be denied, the Commissioner's decision affirmed, and this matter dismissed.

## I.    INTRODUCTION

The Plaintiff filed her first application for SSI on March 5, 2003, alleging that she had become disabled on October 14, 2002. (*See* Doc. No. 9, Certified Transcript of Administrative Record ("TR"), at 57-59.). Her claim was denied initially by the Commissioner on August 5, 2003 (TR 33-35), and again upon reconsideration on January 28, 2004 (TR 38-39). She requested, and was granted, a de novo hearing before an administrative law judge ("ALJ") (TR 1095-1116). The Plaintiff then appeared, with counsel, before ALJ William F. Taylor on November 2, 2005. In a decision dated April 3, 2006, the ALJ denied her application for benefits (TR 11-22). Plaintiff thereafter filed a timely request for review by the Appeals Council, and on May 31, 2007, the Appeals Council denied Plaintiff's request for review, finding insufficient new evidence to warrant such review (TR 6-8).

Thereafter the ALJ's decision became the final decision of the Commissioner, from which the Plaintiff's appeal thus arises pursuant to 42 U.S.C. §§ 405(g) and 13183(c)(3).

## II.     THE FACTUAL RECORD

### A.     Background

Plaintiff was born February 23, 1962 and was forty (a "younger individual") on her alleged onset date ("AOD") of October 14, 2002.  She was forty-one in March of 2003, her SSI application month (TR 57-59), and forty-three (still a "younger individual") on November 2, 2005 (TR 1095-1116), the date of her administrative hearing.  *See* 20 C.F.R. §§ 404.1563, 404.1564, and 404.1565 (classifying individuals according to their age, education and work experience).  Plaintiff graduated cum laude (TR 437) from a four-year college with dual majors, a B.A. in English and a B.S. in Behavioral Science and Social Work (TR 1098, 1109.  She has no relevant work experience.  20 C.F.R. § 404.1565(a)  The Plaintiff worked for seventeen years as an administrative assistant at a graphic design firm before the onset of her alleged disability (TR 1101-1102).

### B.     The Relevant Medical History

#### 1.     *Alleged Physical Impairments*

Plaintiff has a history of a left-side tremor, blurred vision, dizziness, and a loss of balance dating back to September of 2002 (TR 363).  Her treatment for these ailments began at Nashville General Hospital (TR 362-71), and continued under Dr. Richard Hoos, a neurologist at Vanderbilt University Hospital (TR 459-60).  Plaintiff suffered a fall in 2003 which, in combination with preexisting falls related to her prior basal ganglia stroke, ultimately resulted in the Plaintiff receiving a "Certificate of Medical Necessity" for a wheelchair ordered by Dr. Wilson, who treated the Plaintiff for ataxia and her stroke at Vanderbit Medical Center in December, 2003 (TR 491-92); however, by October 2004, the Plaintiff was found to no longer need a wheelchair (TR 482-83).  Dr. Stephen Lee, another Vanderbilt neurologist, evaluated the Plaintiff in February 2004 (TR 711-14), and again in June 2004 (TR 697).  He concluded that her symptoms might be psychological in nature and therefore did not recommend any medication for Plaintiff's tremor, seizure, or stroke (TR 698-99).

#### 2.     *Alleged Mental Impairments*

According to the Plaintiff, her mental infirmities have persisted since at least 2000, when she was evaluated by her then primary care physician for possible manic-depression and psychosis (TR 248).  She was diagnosed during her eight-day treatment at Summit Medical Center in January of 2001 as

having bipolar I disorder, single-episode, without psychotic features, as well as alcohol and cocaine abuse (TR 242). In May of 2004, the Plaintiff came under the care of the Mental Health Cooperative and was assessed for major depressive disorder, severe, with psychotic features, and alcohol abuse (TR 1025). A little over a year later, in June of 2005, Plaintiff received emergency treatment at Summit Medical Center for an acute closed head injury; she was described at that time as being grossly intoxicated and belligerent (TR 842). Plaintiff was again taken to Summit almost a month later when she was found wandering the streets and demonstrating "floridly psychotic behavior." (TR 830.) It is unclear whether the Plaintiff was under the influence of alcohol, but she tested positive for "Benzos" and marijuana (TR 1024). The next day she was diagnosed with psychotic disorder and alcohol dependence, and was admitted to Middle Tennessee Mental Health Institute (MTMHI) because of her bizarre and aggressive behavior (TR 1034). MTMHI assessed an initial GAF of 31, and diagnosed the Plaintiff with bipolar affective disorder with psychotic features and borderline personality disorder (TR 1035).

**C.      Plaintiff's Testimony**

Plaintiff has testified to history of drinking alcohol, and other attendant substance abuse issues (TR 1099-1100), but has since claimed that she ceased drinking alcohol by July 29, 2005 (TR 1105), (medical reports indicate that the Plaintiff's sobriety may have remained in question (TR 821-22, 1024, 1034)); because she unable to imbibe alcohol while taking a prescription for valium (TR 1100). Plaintiff denied that she has been referred or diagnosed for any substance abuse assistance (*id.*).

Plaintiff testified to severe tremors and a significant lack of balance  described by the Plaintiff as "like being on a boat all of the time." (TR 1101–03.) As a result, Plaintiff maintains that she can "walk some but not with any balance or regularity" (*id.*), that she has associated problems with both standing and getting her balance (TR 1109), and has a limited ability to ambulate without the assistance of a wheelchair or a cane (*id.*). However, Plaintiff has also admitted that she has learned to walk again after having balance and ataxia problems, and has no problems with her legs (TR 1103). Plaintiff has also testified to unpredictable seizures and fatigue (TR 1108). Additionally, Plaintiff claims a loss of forty percent of her visual field and problems with double vision which impair her reading ability (TR 1106), but this was found to be a correctable condition by the ALJ (TR 17).

### III.    THE ALJ'S April 3, 2006 DECISION

Based on his review of the entire record, ALJ William F. Taylor made the following findings in the written opinion issued on April 3, 2006:

1.    The claimant meets the insured status requirements of the Social Security Act through the date of this decision.

2.    The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b) and 404.1571 et seq.).

3.    The claimant has the following severe impairments:  left-side tremor, ischeorectal abscess (with colostomy); depression with anxiety; and a drug abuse/alcoholism (DA/A) condition (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity, aside from DA/A, to perform a range of light work with these specific function-by-function limitations:  lift/carry 25 pounds occasionally or frequently (with no overhead reaching); stand/walk for 3 out of 8 hours; sit for 6 out of 8 hours; occasionally engage in postural activities, except for no balancing; and with mild mental functional limitations pertaining to the performance of unskilled work, except for a need avoid working with the general public.  With DA/A included, there would be further moderate to marked mental functional limitations and a history of decompensations

6.    The claimant is unable to perform any past relevant work, without consideration of the DA/A (20 CFR § 404.1565).

7.    The claimant was born on February 23, 1962, and is 44 years old, which is defined as a younger individual (20 CFR § 404.1563).

8.    The claimant has an education beyond high-school (20 CFR § 404.1564).

9.    Transferability of job skills is not material to the determination of the claimant's age (20 CFR 404.1568).

10.    Considering the claimant's age, education, and work experience, and residual functional capacity, including the limitations associated with ongoing DA/A, the weight of the evidence establishes that jobs do not exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c)).

11.    Considering the claimant's age, education, and work experience, and residual functional capacity, aside from DA/A, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c)).

12.    Because the claimant would not be disabled if she stopped DA/A, the claimant's DA/A condition is a contributing factor material to the determination of disability (20 CFR 404.1535).

13.    The claimant has not been under a "disability," as defined in Social Security Act, from October 14, 2002 through the date of this decision (CFR 404.1520(g).

5

(TR 16-22.)

**IV.     APPLICABLE LEGAL STANDARDS**

**A.     Standard of Review**

Under the Social Security Act (the "Act"), the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  This Court, therefore, is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).  If substantial evidence supports the ALJ's conclusion and the ALJ applied the correct legal standards, this Court cannot reverse the ALJ's decision even if substantial evidence exists in the record that would have supported an opposite conclusion.  *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995).  Conversely, however, the Court must reverse and remand for further findings if the ALJ applied incorrect legal standards, even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different.  *See, e.g.*, *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545, 546 (6th Cir. 2004).  Substantial evidence is more than a scintilla of evidence, but less than a preponderance.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantiality is based on the record taken as a whole.  *See Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).  When there has been a misapplication of the regulations or when there is not substantial evidence to support one of the ALJ's factual findings, the appropriate remedy is generally remand under sentence four of 42 U.S.C. § 405(g) for further consideration.  *See Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**B.     Evaluation of Entitlement to Social Security Benefits**

Under the Act, a claimant is entitled to receive benefits only if he is deemed "disabled."  42 U.S.C. § 423(d)(1)(A).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). Disability means a claimant would be unable to "engage in any other kind of substantial work which exists in the economy."  42 U.S.C. § 423(d)(2)(A).

In applying the standards for determining disability, the Secretary has promulgated regulations setting forth a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520 and 406.920.  An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits.  *See id.*  The Sixth Circuit has summarized the five-steps of the sequential evaluation process as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); 20 C.F.R. § 404.1520(b)-(f).  The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at step five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and residual functional capacity.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V.    ANALYSIS AND DISCUSSION

Plaintiff Kimball Rogers presents the following issues for review:

(A)  Whether the ALJ erred by not giving proper weight to the opinions of the Plaintiff's treating physicians as required by statute, case law and applicable rulings, and thereby improperly evaluated the medical opinion evidence;

(B)  Whether the ALJ erred because substantial evidence neither supports the ALJ's RFC determination, nor his finding that Plaintiff can perform the jobs identified by the Vocational Expert;

(C)  Whether the ALJ erred by not following the legal standards outlined in 20 C.F.R. § 1520a in rating the degree of the Plaintiff's mental impairment; and

(D)  Whether the ALJ erred by finding that Plaintiff's drug and alcohol abuse was material to her disability

(Pl.'s Brief, at 14-28.)

As set forth above, the question for this Court is whether substantial evidence supports the ALJ's findings and whether he applied the correct legal standards. *Abbott*, 905 F.2d at 922. Because of the relatively focused nature of the Plaintiff's arguments, the Court does not find it necessary to provide an exhaustive factual account of the Plaintiff's medical history. Instead, the Court will consider each of the Plaintiff's enumerated arguments in turn, and, in addition to the foregoing truncated medical history discussion, will consider only those portions of the medical record as are relevant to her arguments.

> **A. Whether the ALJ erred by not giving proper weight to the opinions of the Plaintiff's treating physicians as required by statute, case law and applicable rulings, and thereby improperly evaluated the medical opinion evidence.**

The Plaintiff argues that the ALJ erred when he relied more heavily on the medical opinions of Drs. Huang, Bounds, Richard (physiological) and Dr. Sherrod (psychologist), and Ms. Patterson ( psychological examiner) than those of Plaintiff's nurse, Alison Cohen ("Cohen"), counselor, Rosemary Cope ("Cope"), and primary care provider, Dr. DesPrez. The Sixth Circuit has observed that even where the Commissioner's decision to reject a claimant's disability application is otherwise supported by substantial evidence, reversal will nonetheless be required if the agency fails to follow its own procedural regulation requiring the agency to " 'give good reasons' for not giving weight to a treating physician in the context of a disability determination." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. *Strunk v. Astrue*, No. 08-201-GWU, 2009 U.S. Dist. LEXIS 33986 (E.D. Ky. Apr. 22, 2009) (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922 (6th Cir. 1987)).

An ALJ generally is required give more weight to opinions from treating sources since "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). Further, an ALJ must give the opinion of a treating source controlling weight if he finds the opinion to be "well supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Id.* The weight given a treating physician's opinion on the

nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985). If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Miksell v. Comm'r of Soc. Sec.*, No. 388, 2008 U.S. Dist. LEXIS 12913, at *21 (S.D. Ohio, June 12, 2008) (citing *Harris*, 756 F.2d at 435)).

If the opinion of a treating source is not accorded controlling weight, an ALJ must consider such factors as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion. *Harris, 756 F.2d at 431-35.*

The regulation also requires the agency to always "give good reasons" in the ALJ's decision for the weight given the treating source's opinion." *Id.* "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that her physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating-physician rule and permits meaningful review of the ALJ's application of the rule. *Wilson*, 378 F.3d at 544-45 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

In addition, however, the Commissioner has interpreted its own rules in 20 C.F.R. §§ 404.1527(f) and 416.927(f) as requiring ALJs to consider the opinions of agency consultants "as opinions of nonexamining physicians and psychologists." SSR 96-6p. Specifically, ALJs are not "bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." *Id.*

In the present case, Plaintiff argues that the ALJ, in denying Plaintiff's claim, improperly rejected the opinion of her primary care provider. Dr. DesPrez, in his report from November, 2003, stated that the Plaintiff "has multiple chronic medical and psychiatric conditions and is unable to work." (TR 387.) Aside from this conclusory observation, however, Dr. DesPrez did not specifically identify Plaintiff's vocational limitations.

Furthermore, the Plaintiff contends that the opinions of DesPrez, Cohen and Cope are entitled to greater weight as medical source evidence, and that the ALJ failed to give good reason for rejecting their opinions (Pl.'s Brief, at 15-20). Plaintiff further alleges that the ALJ erred in relying on the medical assessments of Drs. Huang, Bounds, and Richard. As explained below, the Court nonetheless finds that the ALJ did not err in his treatment of these medical source opinions.

### (1) The Weight Accorded to the Opinions of Dr. DesPrez, Nurse Cohen, and Counselor Cope

The ALJ clearly stated that the opinion Dr. DesPrez was not given significant weight and the reasons for his departure from the normal deference which would have been accorded a treating physician. The ALJ examined the opinion of Dr. DesPrez, and found that his "vague opinion[1]" did not provide any guidance on the Plaintiff's specific limitations so as to determine her residual functional capacity ("RFC"). (TR 19.) The opinions of Cohen and Cope were not rejected, as the Plaintiff contends, but, rather, were taken into consideration by the ALJ in determining the Plaintiff's residual functional capacity (TR 20). As to the weight given to Cope and Cohen, the ALJ correctly indicated that, as they were not medical sources, their opinions were not entitled to be given significant weight (TR 19). Though perhaps the ALJ could have given their opinions more weight, as the Plaintiff suggests, the ALJ was not compelled to do so. 20 C.F.R. § 404.1527(e). Even though the ALJ was not required to accord their opinions significant weight, he was required to consider them as "other sources," which he did when determining the Plaintiff's RFC (TR 19-20).

Finally, there is substantial evidence in the record to support the ALJ's findings that the medical assessments by Dr. DesPrez provided the ALJ with no useful guidance in determining the Plaintiff's RFC. An ALJ is not bound to follow the conclusions of law rendered by a medical source; the determination of disability is "reserved to the Commissioner," so a conclusory assertion that a claimant cannot work is not binding on an ALJ. 20 C.F.R. § 404.1527(e). Accordingly, this Court finds that the ALJ's decision not to accord Dr. DesPrez's opinions controlling weight was not reversible error. Furthermore, as required, the ALJ fulfilled his duty to provide Plaintiff with an adequate explanation as to why he did not accept her physician's disability determination (TR 19).

---

[1] Despite Plaintiff's arguments that 20 C.F.R. § 404.1512 mandated that the ALJ recontact Dr. DesPrez, the recontact provisions of § 1512 are only triggered if there is not enough evidence in the record to determine disability under 20 C.F.R. § 404.1527.

### (2) The Weight Accorded to the Opinions of Drs. Huang, Bounds, and Richard

Specifically, with regard to Plaintiff's ability to ambulate, Dr. Huang, the consulting physician, observed, on the basis of his examination conducted in May 2003, that Plaintiff was "capable of standing/walking 3 out of 8 hours" and "capable of sitting 4-5 hours in an 8 hour day, during which time she could frequently lift 10lbs, and lift 20lbs occasionally." (TR 325-31.) Another agency consultant, Dr. Richard, upon documentary review, found that the Plaintiff was "capable of standing/walking 6 out of 8 hours" and "capable of sitting 6 hours in an 8 hour day, during which time she could frequently lift 25lbs, and lift 50lbs occasionally." *Id.* Yet a third agency consultant, Dr. Bounds, also upon documentary review, found the Plaintiff capable of "standing/walking 3 out of 8 hours" and "capable of sitting 6 hours in an 8 hour day, during which time she could frequently lift 10lbs, and lift 20lbs occasionally." *Id.*

The consultative psychological exam performed by Dr. Sherrod and Ms. Patterson, MA, in July of 2003, found the Plaintiff had a normal ability to understand and remember, but a limited ability to concentrate. *Id.* They also found that the Plaintiff possessed social skills adequate for family and friends, but not the general public. *Id.* Dr. Frieden, later that same month, upon documentary review, specifically found that the Plaintiff, aside from DA/A issues, could perform simple and detailed tasks adequately, could persist and concentrate adequately and independently through a work week; could relate adequately to the general public; and could adapt to routine changes. *Id.*

An ALJ is not bound by the determinations of state agency consultants, but he must explain the weight given to their determinations in rendering his opinion (SSR 96-6p). Here, the ALJ clearly indicated the weight given the agency consultants by stating that "[a]ll of the opinions from examining and non-examining medical and psychological consultants are supported by the objective evidence to varying degrees and are, therefore, entitled to significant weight in determining claimant's residual functional capacity." (TR 20.) After discussing the weight accorded to each opinion, the ALJ determined that Plaintiff possessed the RFC to frequently or occasionally lift/carry twenty-five pounds (with no overhead reaching); stand/walk for three out of eight hours; sit for six out of eight hours; occasionally engage in postural activities, except for balancing; and mild mental limitations related to unskilled work, aside from a need to avoid working with the public. (*Id.*) Given the foregoing, it is clear to this Court that the weight given by the ALJ to the medical opinions was supported by substantial evidence in the record.

**B.** **Whether the ALJ erred because substantial evidence neither supports the ALJ's RFC determination, nor his finding that Plaintiff can perform the jobs identified by the Vocational Expert**

The Plaintiff asserts that the ALJ's hypothetical question posed to the vocational expert (VE) during the Plaintiff's hearing was "inaccurate and incomplete" and, consequently as such, the hypothetical relied upon by the VE in forming his opinion that the Plaintiff was capable of unskilled light work was fatally flawed; therefore, according to the Plaintiff, the ALJ committed reversible error when he relied on such testimony in denying Plaintiff's claim. (Pl.'s Brief at 20–22 (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F2d 777, 779 (6th Cir. 1987).)

As noted above, this Court reviews the ALJ's decision to determine whether substantial evidence supports the finding that the claimant is not disabled. *Varley* does state that substantial evidence provided for the ALJ by the VE in response to a hypothetical question must "accurately portray individual physical and mental impairments." *Varley*, 820 F2d at 779. However, even in *Varley*, the Sixth Circuit upheld the ALJ's reliance on the VE's testimony where such testimony was predicated on a hypothetical which "omitted any reference to Plaintiff's ability to avoid noise[,] ability to cope with interpersonal contact, and . . . dizziness and hearing loss." *Id.* at 780. Furthermore, the Sixth Circuit has clearly held that hypothetical questions to VEs are not required to include exhaustive lists of claimants' medical conditions. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Specifically, the Sixth Circuit has held that a hypothetical does not need to include all of the Plaintiff's limitations, so long as substantial evidence, which may include the testimony by the VE, supports the ALJ's finding. *See, e.g., Foster v. Haller*, 279 F.3d 348, 356 (6th Cir. 2001) (upholding a district court's conclusion that the ALJ did not err by relying on the VE's testimony where that testimony did not include all of the limitations on the claimant's capabilities).

Here, it appears that the ALJ took into consideration the entirety of the medical record when constructing the RFC for the hypothetical he formulated and posed to the VE (TR 18). Because this Court has found that substantial evidence exists in the record to support the ALJ's RFC, it follows then that a hypothetical predicated thereon, especially one which considered the entirety of the medical record in this case, is not flawed, and thus the ALJ's reliance in part on such testimony cannot constitute reversible error.

**C.** **Whether the ALJ erred by not following the legal standards outlined in 20 C.F.R. § 1520a in rating the degree of the Plaintiff's mental impairment**

As to Plaintiff's claim of disabling mental impairment, the Commissioner has promulgated a special technique to ensure that all evidence needed for the evaluation of such a claim is obtained and evaluated. 20 C.F.R. § 404.1520a explains in detail the special procedure, and requires the completion of "a standard document outlining the steps of this procedure." 20 C.F.R. § 404.1520a(d). Under this procedure, the Commissioner must first make clinical findings (*i.e.*, the "A" criteria) as to whether the claimant has a medically determinable mental disorder specified in one of eight diagnostic categories defined in the regulations. *See* 20 C.F.R. Pt. 404. Subpt. P, App. 1, § 12.00A. Then the Commissioner must measure the severity of any mental disorder; that is, its impact on the applicant's ability to work. This impact on the ability to work is assessed in terms of a prescribed list of functional restrictions associated with mental disorders (*i.e.*, the "B" criteria).

The ALJ's decision "must include a specific finding as to the degree of limitation" in the following "B" criteria areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a, 416.920a. However, an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 507-08 (6th Cir. 2006). "In sum, the ALJ's conclusions pertaining to the 20 C.F.R. §§ 404.1520a and 416.920a special technique can be adequately inferred from his overall discussion of Plaintiff's mental status." *Hunley v. Astrue*, No. 2:07-CV-138, 2008 U.S. Dist. LEXIS 41460, at *17-*18 (E.D. Tenn. May 23, 2008).

While those formal specific findings mandated by § 404.1520a are absent in the decision below, the Court finds the error to be harmless in this case. An administrative decision should generally not be reversed and remanded where doing so would be merely "an idle and useless formality." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (citation omitted). Instead, the Court must be able to discern at least some indirect support for the ALJ's decision, such as where the ALJ's reasoning can be inferred from his overall discussion of the disputed condition. *Hunley,* 2008 U.S. Dist. LEXIS 41460, at *17-*18 (citing *Hall v. Comm'r of Soc. Sec.*, 148 FFed. Appx. 456, 463 (6th Cir. 2005)).

Here, the ALJ relied in part on the report of Dr. Frieden finding that the Plaintiff, aside from her DA/A problem, "can do simple and detailed tasks adequately; can persist and concentrate adequately and independently through a work week; can relate adequately to the general public; and can adapt to routine changes." (TR 20.) The ALJ also considered the psychological exam by Dr. Sherrod, which found that the Plaintiff had a "normal" ability to understand and remember, "uneven" ability to concentrate, and "social skills adequate for family and friends, but not for the general public." *Id.* Furthermore, in following the § 404.1520a criteria, the ALJ noted that the Plaintiff had experienced episodes of decompensations, but only when under the influence of drugs or alcohol? (TR 18). Similarly, the ALJ noted that the Plaintiff's concentration, persistence and pace were also markedly limited, but, again, this was only after consideration of Plaintiff's DA/A. *Id.* For reasons which will be discussed below, the ALJ did not err when disregarding the impact of the Plaintiff's DA/A when evaluating the § 404.1520a criteria.

Thus, based on the foregoing, it is clear that the ALJ, in formulating his RFC for the Plaintiff, synthesized the psychological analysis in concert with the underlying medical record,[2] to find that the Plaintiff, aside from DA/A, only exhibited mild mental limitations which precluded her from working with the general public. *Id.* For the aforementioned reasons, this Court finds that those determinations regarding the § 404.1520a criteria by the ALJ were supported by substantial evidence on the record, including Plaintiff's own testimony, and, consequently/therefore, the ALJ's consideration of the Plaintiff's mental health (aside from DA/A) was reasonable and does not constitute reversible error.

**D.     Whether the ALJ erred by finding that Plaintiff's drug and alcohol abuse was material to her disability**

If an ALJ finds that an otherwise disabled claimant has a DA/A issue, then he must first determine which of the claimant's claimed infirmities would remain if the claimant stopped abusing drugs and/or alcohol. 20 C.F.R. § 1535 (b)(1). Next, the ALJ must determine whether the claimant would remain disabled without the DA/A problems. 20 C.F.R. § 1535 (b)(2). If the ALJ finds that such residual, non-DA/A limitations are not disabling, the claimant's DA/A is a contributing factor material to the disability determination, thus precluding a finding of disability under the Act. 20 C.F.R. § 1535(b)(2)(I).

---

[2] The Plaintiff's own responses reveal that she did not have suicidal tendencies, regularly walks her dog, helps with domestic chores like washing dishes and chopping food, and maintains social visits with her friends. (TR 92-95.)

Social Security Ruling 83-20 explains that the "key issue" in a DA/A determination is "whether the individual would continue to meet the definition of disability even if drug and/or alcohol use were to stop." SSR 83-20, 1983 WL 31249 (S.S.A.).  Thus, the DA/A requirements are imposed only where: (1) a claimant's impairments, including DA/A, are found to be disabling; and (2) those same impairments are not disabling if the claimant ceased DA/A.  SSR 83-20.  In other words, if possible, an ALJ must parse out the effects of DA/A on Plaintiff's ability to function in various arenas.  Obviously, if a claimant's mental limitations significantly improve when the claimant abstains from DA/A, an ALJ may find the DA/A "material" to the disability determination.  *Id.*

Plaintiff contends that the ALJ erred in finding that the DA/A is material to the determination of disability in her case, because it was not supported by substantial evidence in the record.  Plaintiff relies on EM 96200 for the proposition that when it is not possible for an ALJ to separate DA/A from an underlying impairment, then a finding of "not material" would be appropriate.   EM-96200, Question 29. [can you cite to a  book or somewhere on westlaw for the EM?]  However, it is clear that the effect of her DA/A was taken into consideration both by the consultative physicians and by the ALJ in determining whether Plaintiff's mental limitations were disabling; the ALJ therefore determined, based on substantial evidence in the record, that it was possible to separate the effects of Plaintiff's DA/A from her other impairments.  The ALJ further found that the Plaintiff was not otherwise suffering from any work-related impairments resulting from her mental limitations (aside from working with the general public).  Thus the ALJ's consideration of Plaintiff's DA/A as preclusive of her recovery for disability was based on substantial evidence in the record and does not constitute reversible error.

**VI.    CONCLUSION**

For the reasons discussed above, the Court finds that the ALJ applied the appropriate legal standards in reaching his conclusion, and that his decision is supported by substantial evidence in the record.  An appropriate order denying Plaintiff's motion for judgment and affirming the Commissioner's decision will be entered.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge